NATIONAL DOCK AND STORAGE WAREHOUSE COMPANY *vs.*
BOSTON AND MAINE RAILROAD.

Suffolk.  January 24, 25, 1916. — May 26, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Public Service Commission.  Railroad.  Unjust Discrimination.*

Under St. 1913, c. 784, § 22, it is the duty of the public service commission upon a complaint of discrimination in a rate established by a railroad corporation for certain transportation to "determine the just and reasonable rates," and an order of the commission to a railroad corporation, directing it to remove as discriminatory a certain rate, without any determination by the commission of what is a reasonable rate, is not an exercise of the power conferred by the statute and consequently is of no effect.

PETITION, filed on December 1, 1915, by the National Dock and Storage Warehouse Company, a corporation organized under the laws of this Commonwealth and having its usual place of business in Boston, for a writ of mandamus addressed to the Boston and Maine Railroad, commanding it to desist from violating an order or orders of the public service commission made under St. 1913, c. 784, § 22, by the establishment of rates unjustly discriminatory as to the petitioner.

The case was heard by *Pierce*, J., who reserved it upon the pleadings and his findings of fact for determination by the full court.

St. 1913, c. 784, § 22, is as follows: "Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates, fares or charges or any of them demanded, exacted, charged or collected by any common carrier now or hereafter subject to its jurisdiction, for any services to be performed within the Commonwealth, or the regulations or

practices of such common carrier affecting such rates, are unjust, unreasonable, unjustly discriminatory or unduly preferential or in any wise in violation of any provision of law, or that the rates, fares or charges or any of them chargeable by any such common carrier are insufficient to yield reasonable compensation for the service rendered and are unjust and unreasonable, the commission shall determine the just and reasonable rates, fares and charges to be charged for the service to be performed, and shall fix the same by order to be served upon every common carrier by whom such rates, fares and charges or any of them are thereafter to be observed. It shall be the duty of every such common carrier to observe and obey every requirement of every such order so served upon it, and to do everything necessary or proper in order to secure absolute compliance with and observance of every such order by all its officers, agents and employees. The commission may, after investigation, authorize a common carrier in special cases to charge less for longer than for shorter distances for the transportation of passengers or property, whenever in the opinion of the commission such authorization is consistent with the public interests, and the commission may from time to time modify or revoke such authorization."

St. 1906, c. 463, Part II, § 201, mentioned in the opinion as containing nothing at variance with the conclusion of the court, is as follows: "A railroad corporation shall not in its charges for the transportation of freight or in the conduct of its freight business, make or give any undue or unreasonable preference or advantage to or in favor of any person, firm or corporation, nor subject any person, firm or corporation to any undue or unreasonable prejudice or disadvantage."

R. *Homans*, for the petitioner.

G. L. *Mayberry*, (E. J. *Rich* with him,) for the defendant.

RUGG, C. J. This is a petition for a writ of mandamus to compel the defendant to comply with orders of the public service commission, made upon a petition brought by the present petitioner against the present respondent alleging that discriminatory rates were charged by it against the petitioner. Summarily stated, that contention was based upon absorption by the respondent of transfer charges from the Commonwealth pier, to which the tracks of the respondent do not run, made to it by the

New York, New Haven, and Hartford Railroad Company and the Union Freight Railroad, in order to transport freight received at the Commonwealth pier on the water front in Boston to the tracks of the Boston and Maine Railroad, while the respondent refused to absorb the transfer charges made by the Boston and Albany Railroad Company from the petitioner's wharf and dock to the tracks of the respondent, its tracks not running to the petitioner's wharf and dock.

The Commonwealth pier has been built within a few years at great expense by the Commonwealth, for the purpose of enlarging the shipping facilities of the port of Boston, and in size, equipment and accommodations for seagoing vessels is at least in some respects by far the finest pier on the harbor front of Boston. It was constructed and managed, so far as concerns this case, by a State board known as the directors of the port of Boston. The petitioner owning a wharf and pier on Boston Harbor, is a competitor with the Commonwealth pier for freight business arriving on foreign steamers at the port of Boston.

After a hearing, the public service commission found: "that the rates on import and export freight destined to or moving from points on the Boston and Maine Railroad in Massachusetts from and to the wharves and docks of the petitioner are unjustly discriminatory as compared with the rates on like traffic between the same Boston and Maine points and the Commonwealth pier." The commission did not then make further order, but found that the absorption by the respondent of the switching charges between the Commonwealth pier and its own tracks was due to a contract entered into by it and the directors of the port of Boston and other railroads under date of July 1, 1912, and that the question of the proper rates was one of complexity and difficulty arising out of conflicting interests between the several railroads involved and the Directors of the Port of Boston and perhaps others, and granted a reasonable period, not exceeding ninety days, for the parties in interest to adjust their differences arising out of the finding of the commission. No adjustment having been made, it entered another order in March, 1915, of the tenor following: "Ordered, That the respondent, the Boston and Maine Railroad, be directed to file with this commission within thirty days from the date hereof, tariffs to become effective thirty days after filing, unless

otherwise ordered by the commission, which will discontinue the unjust discrimination which the commission in these proceedings has found to exist, in so far as such discrimination arises from the rates charged by the Boston and Maine Railroad on intrastate movements of freight to and from the premises of the petitioner from and to points on the Boston and Maine Railroad in Massachusetts as compared with the rates on like traffic between the Commonwealth pier in South Boston and the same points."

Thereafter the respondent filed new schedules of tariffs with the public service commission designed to remove the discrimination of which complaint is made here, by cancelling the rates to Commonwealth pier. Before these tariffs could take effect, the Commonwealth brought suit in the Supreme Judicial Court for Suffolk County to enforce specific performance of the contract of the respondent with it, dated July 1, 1912, and to restrain the respondent from breaking that contract by cancelling the rates to the Commonwealth pier provided for by that contract. An injunction issued on or about July 16, 1915, which appears to be still in force and which suspended the operation of the rates of the new schedules of tariffs and forbade in substance the making of any additional charge respecting freight at Commonwealth pier above that provided in the contract. The respondent complied with the terms of the injunction. Thereafter, on September 13, 1915, the public service commission wrote to the respondent referring to its previous orders, to the filing of the new schedules of tariffs by the respondent, and to the injunction against their enforcement; it recited that these facts had been called to its attention by the present petitioner at a public hearing at which it asked the commission to enforce its previous order; and that the commission recognized that the respondent, while the injunction remained in force, could not remove the discrimination by ceasing to absorb the transfer charges to and from Commonwealth pier, and could only remove that discrimination by absorbing the transfer charges made by the Boston and Albany Railroad Company for freight transported to and from the docks of the petitioner to the tracks of the respondent, and that this was the only way in which the respondent could comply with the order of the public service commission. It then proceeded, "Whether such a compliance would result in unreasonably low rates for the service rendered it

is unnecessary for the Commission at this time to decide." It directed the respondent to comply with its order and stated that in the event of failure on its part the commission would proceed to enforce its order. On October 13, 1915, the commission requested the Attorney General to take steps to enforce its order under St. 1913, c. 784, § 28. The Attorney General declined to take such steps on the ground that in his opinion some discretion was vested in him under the statute and it would be highly inconsistent for him to institute such a proceeding while in other proceedings he was in his official capacity making contentions that the contract of the defendant with the port directors was valid and constituted no discrimination. The soundness of that contention need not now be considered. The present petition is brought to enforce the order or orders of the public service commission.

These orders and decisions as a whole are not within the jurisdiction of the public service commission under the facts here revealed and ought not to be enforced now. It is provided by St. 1913, c. 784, § 22, as to commerce within the State that "Whenever the commission shall be of opinion . . . that the rates, fares or charges or any of them demanded, exacted, charged or collected by any common carrier . . . or the regulations or practices of such common carrier affecting such rates, are unjust, unreasonable, unjustly discriminatory or unduly preferential . . . the commission shall determine the just and reasonable rates, fares and charges to be charged for the service to be performed." The discrimination in the case at bar rested upon a rate charged by the respondent. It had no other basis. It was not a regulation or practice as distinguished from a rate. The very question in the present posture of the case is the compensation which the respondent shall receive for the service of transportation of freight between the petitioner's wharf and pier and points within the Commonwealth on the respondent's line of railroad. Thus, for this reason if for no other, *Pennsylvania Co.* v. *United States*, 236 U. S. 351, 361, 362, and *Louisville & Nashville Railroad* v. *United States*, 238 U. S. 1, 20, are distinguishable from the case at bar.

It was the duty of the public service commission under the statute, since under the circumstances here disclosed the discrimination arose out of a rate, to "determine the just and reasonable

rates" to be charged. St. 1913, c. 784, § 22. An order baldly directing a carrier to remove a discriminatory rate when the only possible way in which that discriminatory rate can be removed is by making a substantial reduction in its rates, and where there is no election to raise some rates or reduce others, without at the same time determining what is a reasonable rate, is not an exercise of the jurisdiction conferred. The determination by the commission that whether compliance with its earlier orders "would result in unreasonably low rates for the service rendered it is unnecessary for the commission at this time to decide," was not in conformity to law. The respondent had attempted to comply with the order of the commission in another way, which involved no reduction in rates. It was prevented by a mandate of the court from carrying out this removal of discriminatory rate. When the orders of the commission according to its own statement required a reduction of rates, it must make a further decision based on evidence that such reduced rate would be fair and reasonable and not confiscatory before its earlier orders would be ripe for enforcement. The wisdom of this requirement of the statute is illustrated by the case at bar. If the respondent cannot absorb into its regular rate the charges made by the Boston and Albany Railroad Company for transportation from the wharf and dock of the petitioner to the Boston and Maine tracks without deprivation of adequate compensation for the service it would be required to render, in the transportation of freight from that source, serious questions would arise. The commission, however, made no finding upon this point. It has not considered in any respect the questions which ought to be considered, if the respondent would not receive a compensatory rate by complying with its orders in the only way in which now it can comply with those orders. See in this connection *National Dock & Storage Warehouse Co.* v. *Boston & Maine Railroad*, 38 I. C. C. Rep. 643.

There is nothing at variance with this conclusion in St. 1906, c. 463, Part II, § 201. It appears from the record that there are numerous other wharves at the port of Boston situated similarly to that of the petitioner. The absorption of transportation charges from these wharves to its tracks by the respondent may or may not be a grave matter to it and may result in its doing that business at a loss. Whether the contract entered into between the

respondent and the directors of the port of Boston and the other carriers is unwise, or open to other objections, are matters not now before us and are left undetermined. It cannot be said, from what is set forth in the record, that the question of absorbing the freight charges for transportation from the petitioner's wharf to its tracks is negligible.

Since the order which is sought to be enforced is not an order issued in conformity to the statutory power of the commission under all the conditions here disclosed, it cannot be enforced at this time. It is not necessary to decide any other question either of form or substance because on this ground the entry must be

*Petition dismissed.*