325 Mass. 281 (1950)
90 N.E.2d 328
DEPARTMENT OF PUBLIC UTILITIES
vs.
NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.
Supreme Judicial Court of Massachusetts, Suffolk.
December 9, 1949.
February 6, 1950.
Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.
J.W. Kelleher, (H. Freed & F.J. Quirico with him,) "acting under the supervision of the Attorney General," for the petitioner.
H.P. Moulton, (C.C. Cabot with him,) for the respondent.
QUA, C.J.
This is a petition for a writ of mandamus brought by the department in this court, purportedly under G.L. (Ter. Ed.) c. 159, § 40, and the last sentence of c. 25, § 5, for the purpose of compelling the company as a common carrier as defined in c. 159, § 12 (d), to charge for telephone service the rates contained in schedules filed by the company with the department on March 31, 1949, as modified by rate sheets filed May 13, 1949, and to refrain from charging, as it is now doing, the higher rates contained in schedules previously filed by it on April 21, 1948.
The single justice of this court ruled that the company was properly charging the higher rates and entered judgment dismissing the petition. The department appealed to the full court. G.L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.
Inasmuch as the case depends almost entirely upon the statutory system of this Commonwealth regulating intrastate activities of common carriers, including telephone companies, we have gathered in a footnote pertinent portions of the principal statutes involved.[1]
*283 The starting point in stating the facts may be taken to be a decision and order of the department on July 24, 1947, authorizing the company to file revised schedules of rates amounting to an increase over rates then in force of about $5,000,000. These schedules were filed on that day and became effective on July 25. On April 21, 1948, the company filed with the department schedules of rates designed to effect a still further increase of about $10,000,000, or a total increase of about $15,000,000 over the rates in effect before July 25, 1947. These have been called the $15,000,000 rates. To allow for the thirty-day interval between the filing and the taking effect of these rates as required by G.L. (Ter. Ed.) c. 159, § 19, when the department does not order "otherwise," these rates were designated as "Effective: May 21, 1948." But on April 22, 1948, the day after the filing of the schedules for these rates, the department suspended their taking effect until March 21, 1949, the maximum period of ten months permitted by G.L. (Ter. Ed.) c. 159, § 20, as amended by St. 1939, c. 18.
*284 Thereupon the department instituted upon its own motion an investigation (D.P.U. 8181) as to the propriety of the proposed rates. On March 18, 1949, three days before the expiration of the suspension, the department announced its decision, wherein it ordered both that the proposed $15,000,000 rates filed April 21, 1948, be disallowed and that the rates filed July 24, 1947, and then in effect be cancelled. Inasmuch as this would leave the company without any rates at all and would fall short of a full performance of the department's duty in the matter (see National Dock & Storage Warehouse Co. v. Boston & Maine Railroad, 227 Mass. 197, 201-202), the department further "ordered" that the company "shall file" on or before April 1, 1949, new schedules of rates to take effect on that day, a principal feature of which was to be the addition of five per cent to each customer's monthly bill for local service based on the rates in effect before the increase of 1947. Some other concessions which need not be stated were made to the company in this order. On March 31, 1949, in *285 accordance with the order of the department of March 18, the company filed, to be effective April 1, 1949, schedules of rates on each sheet of which was marked "Issued in compliance with Order of March 18, 1949, in D.P.U. 8181." These rates provided for the addition of five per cent to each monthly bill according to the order and have been called the five per cent rates. They went into effect on April 1, 1949, in accordance with the order. In a letter of transmittal to the department for the attention of its rate engineer which accompanied these rates and which was sent in compliance with a rule of the department, the company included this statement, "These revised sheets are filed pursuant to the order of the department in D.P.U. 8181, dated March 18, 1949. The company believes and contends that the order of the department in D.P.U. 8181, and the rulings of the department made therein in so far as they were adverse to the company, are unlawful, and that the order is contrary to Articles X and XII of the Declaration of Rights of the Massachusetts Constitution, and the company objects thereto. The filing of these revised sheets is made without prejudice to, and does not constitute a waiver of, such contentions and objections; on the contrary, the company insists thereon, and to that end, proposes to take appropriate action under G.L. (Ter. Ed.) c. 25, § 5."
The decision of the department of March 18, 1949, stated that it made no provision for an increase in the wages paid by the company which became effective September 12, 1948, while the investigation was pending; that if the company had (as it asserted) incurred additional reasonable and allowable labor costs of $3,000,000 it was entitled to additional revenues sufficient to provide for this expense; and that if the company's management was of the opinion that because of such labor increase it required revenues additional to those allowed by the decision, it was "open to the company to seek appropriate relief from this department." In pursuance of this suggestion, the company filed with the department on March 24, 1949, a petition to increase its rates by four per cent in addition to the five *286 per cent ordered by the department on March 18, so as to make a total surcharge of nine per cent. These have been called the nine per cent rates. In its petition the company stated, "The company believes and contends that the order of the department in D.P.U. 8181, and the rulings of the department made therein in so far as they were adverse to the company, are unlawful, and that the order is contrary to Article X and XII of the Declaration of Rights of the Massachusetts Constitution. The filing of this petition does not constitute a waiver of such contentions; on the contrary, the company insists thereon and, to that end, proposes to take appropriate action under G.L. (Ter. Ed.) c. 25, § 5. This petition is filed only for the purpose of permitting the company to obtain the earnings and return allowed by the commission which return the company contends is inadequate."
On April 21, 1949, the company filed in this court a "Bill of Complaint under G.L. (Ter. Ed.) c. 25, § 5," for the purpose of annulling the department's order of March 18, 1949, which had disallowed the $15,000,000 rates filed April 21, 1948, and had substituted lower rates as hereinbefore set forth. By its bill it sought to establish its right to collect the rates of April 21, 1948, on the ground that the lower rates ordered by the department were unreasonable, confiscatory, and unconstitutional. It also sought a stay pendente lite of the order of the department of March 18, 1949. On May 13, 1949, after hearing, the department, in substance, granted the company's petition of March 24, 1949, for the so called nine per cent rates. Thereupon the company filed with the department, for effect on May 14, the rate sheets necessary to realize the nine per cent rates allowed by the department's order of May 13, and in its letter of transmittal it included a statement that its petition of March 24 was solely for the purpose of obtaining additional revenue to offset the wage increase which the department had not provided for in its order of March 18, but which was stated to be "necessary in order to permit the company even to attain the 4.853% rate of return which the *287 department allowed." This letter also repeated the company's contention that the order of March 18 was unconstitutional and its statement that the petition of March 24 had been filed "only for the purpose of permitting the Company to obtain the earnings and return allowed by the commission [department?] which return the company contends is inadequate." The letter further referred to the equity suit then already brought in this court and stated that the company was filing the nine per cent rates without prejudice to the contentions in its bill of complaint, without waiver of any rights, and "solely for the purpose of temporarily minimizing its losses by obtaining even the inadequate return allowed by the department in D.P.U. 8181 pending action of the court in granting the stay applied for, or if such stay be not granted, pending its final decree." Thereupon the company began charging the nine per cent rates permitted by the department's order of May 13, and did so until the decree of this court of May 25, hereinafter mentioned.
On May 23, 1949, a single justice of this court, after hearing, entered an interlocutory decree in the equity suit, reciting that the company had filed with the department a bond in the sum of $1,000,000, conditioned upon the refund by the company to its customers of any sums that might be collected by it in excess of the sums which might be determined to have been legally collectible, and staying pendente lite the department's order of March 18 disallowing the $15,000,000 rates filed April 21, 1948. This decree was equivalent to a temporary injunction to save the company from irreparable loss, if the court should ultimately decide that the rates imposed by the department were confiscatory. Two days later, on May 25, 1949, the single justice entered by consent a second decree staying pendente lite the order of the department of May 13, allowing the nine per cent rates. This consent decree was proposed by the department itself, because it feared that if its order of May 13 were not stayed the nine per cent rates allowed by that order might be charged in addition to the *288 $15,000,000 rates which the company intended to charge pendente lite after the order of the department of March 18 disallowing those rates had been stayed. After the decree of May 25 the company began charging the $15,000,000 rates contained in its schedules filed on April 21, 1948.
The department contends that the company should now charge the nine per cent rates allowed May 13, 1949, and should be compelled to do so in this mandamus proceeding in spite of the fact that the department's order of March 18, 1949, disallowing the $15,000,000 rates, out of which order all the subsequent proceedings arose, was stayed by the interlocutory decree of this court of May 23, 1949, and in spite of the fact that the department's order allowing the nine per cent rates was itself stayed by this court by the consent decree of May 25, which decree the department contends was beyond the jurisdiction of the court and void. The company contends that when the order of the department of March 18, 1949, disallowing the $15,000,000 rates filed April 21, 1948, and substituting other rates therefor, was stayed by this court the $15,000,000 rates went into effect pendente lite and subject to the bond, and that it is now rightly charging those rates.
To this petition for a writ of mandamus the company demurred, and filed pleas, principally on the ground that the department has a complete remedy in the equity suit, which was pending in this court before the present petition was entered, and is still pending. The company contends that this petition for a writ of mandamus is a collateral attack upon the interlocutory decrees of this court above described, entered in the equity suit. If it were necessary to deal with these questions they would require careful consideration. But it is evident that the department and the company are in serious disagreement as to the present effect of the several orders of the department and decrees of this court hereinbefore set forth, and it seems desirable in the interest of orderly administration now and in the future that these differences be resolved as promptly as possible. We therefore turn at once to a discussion of substantive rights and *289 duties. We can do this because the result of the case will be the same in any event, and decision upon the substantive issues will render the demurrer and pleas of no consequence. This decision is not to be taken as authority upon any of the issues raised by the demurrer or the pleas and not also directly involved in dealing with the merits.
In our opinion the rights of the parties, succinctly stated, were and are as follows: If it were not for the department's statutory power to regulate rates the company would have had the full right to promulgate and put into effect the $15,000,000 rates filed April 21, 1948. It still had that right except as its acts were affected and modified by orders of the department. This appears from the language of G.L. (Ter. Ed.) c. 159, §§ 14, 17, 18, 19, and, particularly, the first two sentences of § 20, as amended by St. 1939, c. 18. We do not understand that the department disputes this. The order of the department of April 22, 1948, suspending the taking effect of the $15,000,000 rates was, prima facie, a valid order under c. 159, § 20, as amended by St. 1939, c. 18. That order, and that alone, prevented the $15,000,000 rates going into effect until the suspension should expire on March 21, 1949. But before the suspension expired the department made its decision and order of March 18, 1949, disallowing the $15,000,000 rates and requiring the company to file in substitution therefor a new schedule of rates specified by the department. This also was, prima facie, a valid order and had the effect of continuing to prevent the $15,000,000 rates from taking effect and also put into effect the rates then ordered by the department; but this order was subject at all times and in all its parts to be reviewed, modified, amended, or annulled by this court under G.L. (Ter. Ed.) c. 25, § 5, to the extent of any "unlawfulness" therein, including of course any confiscatory or unconstitutional element contained in it. The order was also subject under § 5 and the rules of this court[1a] to having its *290 enforcement "stayed" until its lawfulness or unlawfulness could be determined after full hearing in this court. The words of the statute "upon what terms the enforcement of the order shall be stayed" do not refer merely to the staying of some actual proceeding taken by the department to enforce its order. They include the staying of the obligation of the company to obey the order. The company immediately announced its intention to avail itself of its judicial remedy and without delay began suit in this court to have temporarily stayed and finally annulled the order of the department of March 18 in all its parts and to test the company's constitutional right to put into effect rates not lower than the $15,000,000 rates filed April 21, 1948. This court, acting under the statute, decreed a stay of the order of the department. This rendered the entire order ineffective pendente lite, both that part which disallowed the $15,000,000 rates and that part which ordered lower rates in substitution therefor. The result was to remove the only bar which had theretofore prevented the $15,000,000 rates from taking effect and those rates took effect at once pendente lite. The schedules of those rates have at all times remained on file with the department, and satisfy the statutory requirement of filed schedules. The company is rightfully charging its customers those rates, and until the final decision of this court as to the right of the company to maintain them the customers are protected by the bond.
The department contends, as we understand it, that the company has lost its right to charge the $15,000,000 rates filed April 21, 1948, by reason of having filed the schedules of the five per cent rates pursuant to the order of the department of March 18, 1949, and also by reason of having on March 24, 1949, petitioned for the nine per cent rates and having on May 13, 1949, after favorable action by the department on that petition, filed the schedules of the nine per cent rates. We cannot agree with either contention. When on March 18, 1949, the department specifically ordered the company to file new schedules of rates (which *291 resulted in the filing of the five per cent rates),[1b] it was the absolute duty of the company under the statute to obey that order and to file and abide by those rates unless and until this court should grant relief by an interlocutory stay or by final decree. General Laws (Ter. Ed.) c. 159, § 14, provides in part, "Every such common carrier shall obey every requirement of every such order served upon it, and do everything necessary or proper in order to secure absolute compliance with every such order by all its officers, agents and employees." As we have already said, the department's order of March 18, 1949, was in force until stayed, modified, amended, or annulled by this court. International Railway v. Prendergast, 52 Fed. (2d) 293, 296. The company did not by observing the order in obedience to the command of c. 159, § 14, lose its right to have this court pass upon the lawfulness of the order under c. 25, § 5. Allen v. St. Louis, Iron Mountain & Southern Railway, 230 U.S. 553, 555. Banton v. Belt Line Railway, 268 U.S. 413, 417-418.
Neither did the company lose its right by availing itself of the suggestion made by the department itself in its decision of March 18, 1949, that the department might, upon petition, allow the company increased rates (the nine per cent rates) in consequence of added labor costs. It was proper for the department to make this suggestion. We discover no reason why the company could not avail itself of the suggestion and acquire the added revenue, the need of which the department itself recognized, without abandoning the company's right to insist upon having this court determine the constitutionality of the department's order of March 18, 1949. See Lowell Gas Co. v. Department of Public Utilities, 324 Mass. 80, 81-82, and note. The department's allowance of the nine per cent rates was not made, and could not have been made, conditional upon the *292 company's abandonment of constitutional rights. It is obvious that the company never intended to waive or abandon its right to test the order of March 18, 1949, in this court. Waiver is commonly defined as the intentional relinquishment of a known right. The company asserted and insisted upon its rights in the clearest terms at every stage of the proceedings. See International Railway v. Prendergast, 52 Fed. (2d) 293. It insisted at all times that the increases allowed by the department were inadequate, and that the rates as allowed were confiscatory. It took the necessary proceedings leading to the interlocutory decree staying the order of March 18, 1949. No provision of statute prevented the company from taking this course. Such course was not contrary to public policy. Indeed, a case may well be imagined where the solvency of an important utility might depend upon its ability to take such increases as a regulatory board should concede it ought to have without thereby losing its right to claim more. Each order made and each rate filed (whether in pursuance of an order or of a suggestion or permission) after the department's order of March 18, 1949, was made or filed subject to the right of the company to have this court pass upon that order, and in the discretion of the court to stay its enforcement pendente lite, and ultimately to allow the $15,000,000 rates of April 21, 1948, to take final effect, if lower rates should be found confiscatory and unconstitutional. The fatal flaw in the department's argument consists in its failure to recognize and apply this principle. Only by insistence upon this principle can the right of appeal to this court granted by G.L. (Ter. Ed.) c. 25, § 5, be fully preserved.
We do not find it necessary to determine whether the second interlocutory decree of the single justice of this court, entered by consent May 25, 1949, purporting to stay pendente lite the order of the department of May 13 permitting the nine per cent rates was beyond the power of the court, as the department now contends it was on the ground that there had been no "appeal" under G.L. (Ter. Ed.) c. 25, § 5, from the order allowing those rates. We do not imply *293 that the court did not have power to enter in the equity suit that was filed suitable interlocutory decrees to protect the rights of the company and to save it from irreparable loss pending that suit, but in our opinion the interlocutory decree of May 25 was in any event unnecessary and without practical effect, since as hereinbefore explained the earlier interlocutory decree of May 23 staying the department's order of March 18 had the result of permitting the $15,000,000 rates to take effect pendente lite and so necessarily had the effect of suspending pendente lite all the lower rates filed later, including the nine per cent rates which the department is now seeking to enforce.
From what has been said it follows that the single justice rightly ruled that the company is now properly charging the $15,000,000 rates filed April 21, 1948, and rightly dismissed this petition.
We need hardly add that if on the hearing on the merits of the equity suit pending in this court the company shall be unable to maintain its contention that the order of the department of March 18, 1949, was confiscatory and unlawful, an entirely different situation will be presented.
Judgment affirmed.
NOTES
[1] G.L. (Ter. Ed.) c. 25, § 5, second paragraph: "The supreme judicial court shall have jurisdiction in equity to review, modify, amend or annul any ruling or order of the commission, or of any member or members representing the commission, but only to the extent of the unlawfulness of such ruling or order. The procedure before said court shall be that prescribed by its rules, which shall state upon what terms the enforcement of the order shall be stayed.... The burden of proof shall be upon the party adverse to the commission to show that its order is invalid...." Third paragraph: "The supreme judicial court shall also have jurisdiction, upon application of the commission, to enforce all valid orders of the commission and the provisions of this chapter and of chapter one hundred and fifty-nine."

G.L. (Ter. Ed.) c. 159, § 14, first paragraph: "Whenever the department shall be of opinion, after a hearing had upon its own motion or upon complaint, that any of the rates, fares or charges of any common carrier for any services to be performed within the commonwealth, or the regulations or practices of such common carrier affecting such rates, are unjust, unreasonable, unjustly discriminatory, unduly preferential, in any wise in violation of any provision of law, or insufficient to yield reasonable compensation for the service rendered, the department shall determine the just and reasonable rates, fares and charges to be charged for the service to be performed, and shall fix the same by order to be served upon every common carrier by whom such rates, fares and charges or any of them are thereafter to be observed. Every such common carrier shall obey every requirement of every such order served upon it, and do everything necessary or proper in order to secure absolute compliance with every such order by all its officers, agents and employees...."
G.L. (Ter. Ed.) c. 159, § 18: "Subject to the powers of the department to regulate and prescribe rates and charges, a common carrier may make commodity, transit or other classes of rates...."
G.L. (Ter. Ed.) c. 159, § 19: "Every common carrier shall file with the department and shall plainly print and keep open to public inspection schedules showing all rates, joint rates, fares, telephone rentals, tolls, classifications and charges for any service, of every kind rendered or furnished, or to be rendered or furnished, by it within the commonwealth, and all conditions and limitations, rules and regulations and forms of contracts or agreements in any manner affecting the same, in such places, within such time, and in such form and with such detail as the department may order.... No common carrier shall, except as otherwise provided in this chapter, charge, demand, exact, receive or collect a different rate, joint rate, fare, telephone rental, toll or charge for any service rendered or furnished by it, or to be rendered or furnished, from that applicable to such service as specified in its schedule filed with the department and in effect at the time.... Unless the department otherwise orders, no change shall be made in any rate, joint rate, fare, telephone rental, toll, classification or charge, or in any rule or regulation or from of contract or agreement in any manner affecting the same as shown upon the schedules filed in accordance with this chapter, except after thirty days from the date of filing a statement with the department setting forth the changes proposed to be made in the schedule then in force and the time when such changes shall take effect, and such notice to the public as the department orders, to be given prior to the time fixed in such statement to the department for the changes to take effect...."
G.L. (Ter. Ed.) c. 159, § 20, as amended by St. 1939, c. 18: "Whenever the department receives notice of any changes proposed to be made in any schedule filed under this chapter, it may, either upon complaint or upon its own motion, and after notice, hold a public hearing and make investigation as to the propriety of such proposed changes. Pending any such investigation and the decision thereon, the department may, by order served upon the common carrier affected, suspend, from time to time, the taking effect of such changes, but not for a longer period than ten months in the aggregate beyond the time when the same would otherwise take effect. After such hearing and investigation, the department may make, in reference to any new rate, joint rate, fare, telephone rental, toll, classification, charge, rule, regulation or form of contract or agreement proposed, such order as would be proper in a proceeding under section fourteen...."
G.L. (Ter. Ed.) c. 159, § 40: "Whenever the department is of opinion that a common carrier subject to its supervision is failing or omitting or about to fail or omit to do anything required of it by law or by order of the department, or is doing anything or about to do anything or permitting anything or about to permit anything to be done, contrary to or in violation of the law or of any order of the department, it shall direct its counsel to begin, subject to the supervision of the attorney general, an action or proceeding in the supreme judicial court in the name of the department for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction."
[1a] Equity Rule 34, 252 Mass. 610.
[1b] If the use in this order of the word "may" in connection with the additional five per cent is to be construed as giving the company an option whether or not it should take the additional five per cent, which we do not decide, at least the order required the company to file new schedules no more advantageous to it than the five per cent rates.