MARTIN COHEN & another *vs.* BOARD OF REGISTRATION
IN PHARMACY.

Suffolk.   December 9, 1965. — February 9, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Drug Store.   Permit.   State Administrative Procedure Act.   Equity Jurisdiction,* Judicial review under State administrative procedure act. *Words,* "Substantial evidence."

Upon an application under G. L. c. 112, § 39, as amended through St. 1953, c. 281, to the Board of Registration in Pharmacy for registration of a retail drug store owned by a corporation and issuance of a permit to operate the store to a registered pharmacist, the board's determination, after a hearing, of the question whether "the management of the drug business in such store . . . [would be] in the hands of" the pharmacist was reviewable by the courts under G. L. c. 30A, § 14.   [251]

That the Board of Registration in Pharmacy might reject testimony favorable to the applicant in making a decision denying an application under G. L. c. 112, § 39, for registration of a retail drug store and issuance of a permit to operate it could not supply in the record on judicial review "substantial evidence" supporting the decision within c. 30A, § 14 (8) (e).   [251–252]

Upon judicial review of an "agency" decision under G. L. c. 30A, § 14 the court is not bound to affirm the decision merely because there is some evidence in the record to support it if, "upon consideration of the entire record" as required by (8), the court determines that the decision is "Unsupported by substantial evidence" within (8) (e).   [253]

In a proceeding under G. L. c. 30A, § 14, reviewing a decision by the Board of Registration in Pharmacy denying an application under G. L. c. 112, § 39, as amended through St. 1953, c. 281, for registration of a retail drug store owned by a corporation and issuance of a permit to operate it to a registered pharmacist, it was held that certain positive and uncontradicted evidence before the board showing that within § 39 "the management of the drug business in such store . . . [would be] in the hands of" the pharmacist so outweighed inferences to the contrary drawn by the board from other evidence that such inferences could not constitute "substantial evidence" supporting the board's decision within §§ 1 (6), 14 (8) (e) of c. 30A, and that the trial judge correctly ruled the decision to have been "unsupported by substantial evidence."   [251, 253]

Where it was determined in a proceeding under G. L. c. 30A, § 14, that a decision of the Board of Registration in Pharmacy denying an application under c. 112, § 39, for registration of a retail drug store and

issuance of a permit to operate it was erroneous and it appeared that several years had elapsed since the application was submitted to the board, it was proper in the circumstances to exercise the discretion conferred by § 14 (8) by entering a decree ordering the registration and issuance of the permit.  [253]

PETITION for review filed in the Superior Court on August 3, 1962.

The respondent appealed from a decree entered after hearing on the merits by *Hudson, J.*

*David Berman,* Assistant Attorney General, for the respondent Board of Registration in Pharmacy (*John F. Zamparelli,* for the intervener, Massachusetts State Pharmaceutical Association, with him).

*Harold Rosenwald* (*George W. Cashman* with him) for the petitioners.

SPALDING, J.  This case has been here twice for the determination of procedural issues.  *Cohen* v. *Board of Registration in Pharmacy,* 347 Mass. 96.  *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491 (and a companion case).  It now comes here on the merits.

In February of 1962 the petitioners, Hingham Pharmacy, Inc. (Hingham) and Martin Cohen (Cohen), applied to the Board of Registration in Pharmacy (board) for the registration of a store in Hingham for the transaction of the retail drug business, and for the issuance of a permit to Cohen, a registered pharmacist, to operate the store.  See G. L. c. 112, §§ 38, 39.

The hearing was held in May, 1962, and in July the board gave notice of their denial of the application.  After prolonged litigation of various points of procedure, the chronology of which need not detain us (see *Milligan* v. *Board of Registration in Pharmacy, supra,* at p. 494), the case was heard on the merits of the board's decision in the Superior Court.  The judge made findings upholding the board's decision.  Before the entry of a final decree, however, he made a supplementary finding to the effect that the board's decision was "unsupported by substantial evidence to warrant the conclusions upon which it was based," and that

the board drew "inferences unfavorable to the [p]etitioner which are not based upon sufficient or established facts."[1] A final decree was entered ordering the board to register the drug store owned by Hingham Pharmacy, Inc. (Hingham) and to issue a permit to Cohen to operate the store. From this decree, the board appeals. The Massachusetts State Pharmaceutical Association was permitted to intervene as a party in the proceedings before the board (G. L. c. 30A, § 10), and it filed notice of intervention in the review proceeding (c. 30A, § 14 [5]). It has also filed a brief in this court in support of the board's decision.

The evidence received by the board, which was virtually uncontradicted, may be summarized as follows: Cohen is a registered pharmacist in this Commonwealth. Hingham is a Massachusetts corporation which was organized in February of 1962 for the retail sale of drugs, chemicals, physicians' supplies, and so forth. Of Hingham's 230 outstanding shares, 222 are held by Parkview Drugs, Inc. (Parkview), a Missouri corporation which operates "drug and prescription departments" in numerous States, three by the incorporators, and five by Cohen. The "prime movers" behind Parkview and Hingham, who are also the president and vice-president, respectively, of Hingham, are John and Phillip Small. Both are pharmacists registered in Missouri.

The proposed store is to be located on premises leased by Hingham from G.E.M. of Hingham, Inc. (Gem), a so called closed-door membership department store, with a branch in Hingham, Massachusetts, and in various other States.[2] The lease describes the premises as a "certain well defined space walled off from the rest of the said Lessor's premises . . . and inaccessible from the 'inside'

---

[1] The original findings were made on January 29, 1965. The supplementary findings were made on February 19, 1965. The *Milligan* decision was handed down on February 8, 1965, and doubtless that was the reason for the reconsideration of the case by the judge.

[2] According to the evidence a closed-door membership store is one operated for the benefit of persons who pay a membership fee for the right to purchase at such store.

[thereof].'' The term of the lease is one year, with options to extend the term for four additional one year periods. The provisions of the lease emphasize that the various aspects of the business to be conducted, such as advertising, displays, the hiring of employees, business hours, taxes, and compliance with local, State, and Federal laws, are to be under the exclusive control and responsibility of Hingham. Rental for the premises, and for other facilities such as parking, is ''a sum equal to Six Percent (6%) of the Total Gross Sales . . . of the . . . Lessee's premises.'' The lessor has reserved the right to check the lessee's register tapes.

The memorandum submitted by Hingham to the board states that ''while the G.E.M. Store is a closed-door membership store . . . [Hingham] is open to all and requires no fee for service . . . .'' Also, a deposition of Phillip Small, Hingham's vice-president and chairman of the board of Parkview, states that Hingham is ''completely . . . and irrevocably independent from G.E.M. of Hingham, Inc.''

Under a written contract with Cohen, Hingham has employed him ''To act as a Registered Pharmacist on the said premises and as the Store Manager under the direction of the Company's officers, directors, or General Manager.'' The contract runs for two years, but either party has a right to terminate upon thirty days notice. Cohen has purchased five shares of Hingham at par and has options to purchase up to seventy additional shares. Upon termination of Cohen's employment for any reason, Hingham has the right to repurchase all of his shares at book value. Cohen testified that he would have complete control over the pharmaceutical aspects of the business and would enforce compliance in the store with both the board's code governing pharmacy and the applicable laws. Phillip Small supported this testimony in his deposition, adding that the ''only control that Hingham . . . will exercise over its . . . pharmacists will lie in those areas wherein such control is not inconsistent with the duties and the obligations . . . [of] a registered pharmacist.''

The board also received numerous letters from drug manufacturing firms, pharmaceutical associations, and banks testifying to the high reputation of both Parkview and the Small brothers in the retail drug industry.

Evidence, in addition to the above, from which the board sought to draw inferences adverse to Hingham includes the following: The by-laws of Hingham, reciting that "The Board of Directors shall have general direction, management and control of the business . . ." and that the president shall "exercise general supervision . . . of the corporation's affairs"; a resolution adopted by Hingham's board of directors authorizing its president, John Small, to negotiate the agreement with Gem, "on the same approximate terms and conditions as other license agreements now in existence between [Parkview] subsidiaries . . . and GEM"; a prospectus filed by Parkview with the Securities and Exchange Commission (S.E.C.) in 1962, outlining a plan to operate "licensed departments in nine new closed-door membership department stores located in Memphis, etc., *including Massachusetts*, . . . [t]he company . . . [being] required to sell in the name of the particular store in which the department may be located . . ., the store operator (GEM) . . . [to provide] advertising . . ."; and the proposed schedule of Hingham's business hours, which coincide with the hours during which the Gem departments are in operation.

The board drew from this evidence two inferences, on the basis of which it seeks to justify its rejection of the petitioners' applications. The first is that Cohen's position in Hingham is such that he will not be able to exercise the kind of control over the professional aspects and standards of the pharmacy contemplated by § 39. For this conclusion the board relies primarily on the termination clause in his contract, his meager stock holdings, and the by-laws which purport to vest the management of the store in Hingham's board of directors and corporate officers. The board further concludes that the close relationship between the operations of Gem and Parkview subsidiaries in other

parts of the country as revealed by the S.E.C. prospectus, buttressed by what is described as a fact "generally known in the community . . . [of which the board took notice] that leases by such shopping centers usually provide for a more or less detailed control of the operation of businesses within the premises leased," raises substantial doubt that Cohen would have the requisite managerial powers.

Under § 39, the board has the right to reject a corporation's application for registration "unless it shall appear to . . . [its] satisfaction . . . that the management of the drug business in such store is in the hands of a registered pharmacist."[3] However, its determination of this question is subject to judicial review under G. L. c. 30A (Administrative Procedure Act). *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491. Pursuant to § 14 (8), of the act, the court may set aside a decision which prejudices any party, if it finds that the decision is "[u]nsupported by substantial evidence . . . upon consideration of the entire record, or such portions of the record as may be cited by the parties."

Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." C. 30A, § 1 (6). *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 718. But the statement of this definition does not solve the difficulties and uncertainties of its application. Nowhere is this more apparent than where, as here, a determination must be made as to the true nature of future relationships and conduct, the evidence of which necessarily consists of promises, assurances and written documents.

Although the board was not bound to accept the testimony on behalf of the petitioners, or that the terms of Cohen's contract and the Gem lease are what they purport to be, the rejection of this evidence could not create

[3] Statute 1962, c. 695, approved July 18, 1962, effective ninety days thereafter, and St. 1963, c. 488, alter the language of § 39. Inasmuch as the present hearing was held May 23, 1962, prior to the effective dates of both amendments, we need not consider what effect, if any, these changes would have upon this dispute.

substantial evidence to the contrary. *Salisbury Water Supply Co.* v. *Department of Pub. Util., supra,* at p. 721. In fact, the board has not indicated its disbelief of the petitioners' evidence; nor has it based its decision upon any direct evidence to the contrary. Simply stated, its position appears to be that the relationship between Gem and Parkview subsidiaries in other States, and between lessors and lessees of shopping center premises in general, and the apparent control over the store which the Hingham officers would have by virtue of the by-laws and Cohen's tenuous position in the enterprise are inconsistent with the proposition that Cohen would be in charge of the professional aspects of the pharmacy.[4]

We think that these inferences, drawn by the board, are neither reasonable nor permissible. Specifically, the relationship between Gem and Parkview in other States, or that generally existing between parties in like situations, without more, establishes no basis for concluding that the same relationship exists in this instance. But even if the contrary were true, this is no basis for concluding that there would be interference with Cohen's management of the drug aspects of the business. Though the terms of Cohen's employment, his meager stock holdings, and the corporation's by-laws have relevance, a holding that they constitute substantial evidence for the board's decision would in effect create a discretionary power in the board to withhold registration from any incorporated pharmacy, the managing pharmacist of which was not a substantial shareholder, a corporate officer, or at least the possessor of a long term employment contract. We find no indication in c. 112 of a legislative intent to so restrict entry into the retail drug field (see *Louis K. Liggett Co.* v. *Baldridge,* 278 U. S. 105), or of an intent to delegate to the board the power to make policy decisions of this nature.

---

[4] In its findings the board also based its decision on a conclusion that "there is no evidence the public welfare and convenience would be served by the granting of the application." Whatever the situation may be now by reason of the amendment made by St. 1962, c. 695, § 39, prior to this amendment clearly did not grant to the board the power to reject an application for this reason, and the respondent has not argued the contrary.

We feel constrained to add that even if there is some evidence in this record from which a rational mind might draw the desired inference, we are not required under the substantial evidence rule as set forth in § 14 (8), to affirm the board's decision. Whether under prior practice an administrative determination was regarded as final if, ignoring the evidence to the contrary, there was any evidence to support it (see *Chapman's Case,* 321 Mass. 705, 707; *McKeon's Case,* 326 Mass. 202, 203; *Weiner* v. *Director of the Div. of Employment Security,* 327 Mass. 360, 363), this is not the case under the Administrative Procedure Act. Section 14 (8) of the act directs that the court's determinations are to be made "upon consideration of the entire record," and we agree with the view taken by the Supreme Court in construing a similar clause in the Federal Administrative Procedure Act, that "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp.* v. *National Labor Relations Bd.* 340 U. S. 474, 488. We are of opinion that the uncontradicted testimony regarding Cohen's management of Hingham's drug business so outweighs any conceivable inferences to the contrary that such inferences cannot be said to constitute substantial evidence in support of the board's decision.

After finding that the board's decision was unsupported by substantial evidence, the judge properly exercised the discretion conferred by the act in ordering Hingham's registration and the issuance of a permit to Cohen. Section 14 (8) provides that where prejudicial error has been found, "the court may . . . compel any action unlawfully withheld or unreasonably delayed." The record reveals that nearly four years have elapsed since Hingham's application was submitted to the board. As noted above, this dispute has been before us on two prior occasions involving procedural issues. While caution should be exercised by a court in ordering the issuance of occupational licenses, we think that the judge below did not err in deeming this case an appropriate one for such relief.

*Final decree affirmed.*