LEONARD KAHN, trustee,[1] *vs.* BROOKLINE RENT CONTROL
BOARD & another.[2]

Norfolk.  December 5, 1984. — May 7, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Rent Control*, Eviction, Judicial review.

In a proceeding before a municipal rent control board by a landlord seeking
    to evict a tenant who occupied the last unsold apartment in a rent-con-
    trolled building converted into condominium units and who was consist-
    ently late in paying his rent, there was substantial evidence to support
    the board's conclusion that the landlord's primary purpose for seeking
    eviction was sale of the apartment rather than promptness of rental
    payments and that such a purpose in seeking eviction was inconsistent
    with the provisions and purpose of the rent control by-law. [712-713]

CIVIL ACTION commenced in the Brookline Division of the
District Court Department on October 18, 1982.

The case was heard by *Lawrence D. Shubow*, J.

*Roger R. Lipson* for Brookline Rent Control Board.

*A. Joseph Ross* for John Businger.

*Herbert S. Lerman* for the plaintiff.

LIACOS, J. On June 24, 1980, the defendant Brookline Rent
Control Board (board) denied an application for a certificate
of eviction sought by the plaintiff (landlord). The landlord had
filed for the certificate on the ground that the defendant John
Businger (tenant) consistently paid his rent late. A judge of
the Brookline Municipal Court upheld the board's decision.
See Brookline by-law art. XXXVIII, § 10 (a); St. 1970, c. 843,
§§ 4, 5 (a); G. L. c. 30A, § 14. The landlord claimed a report
to an Appellate Division of the District Court Department (Ap-
pellate Division). G. L. c. 231, § 108. The Appellate Division

---

[1] The plaintiff is trustee of St. Paul Manor Development Trust.

[2] John Businger.

concluded that (1) the board's finding that the landlord acquiesced by accepting late rental payments was unsupported by substantial evidence, and (2) the board erred in concluding that the landlord's forbearance from invoking the remedy of eviction at an earlier point in time warranted a finding that he relinquished his right to insist on full performance of the contract, i.e., prompt rental payments. The Appellate Division vacated the judgment affirming the board's decision, and remanded the case to the board for "additional findings of fact on whether the landlord's purpose in seeking permission to evict is consistent with the provisions and purposes of the rent control by-law, and for further proceedings consistent with this opinion."

After further hearings and the introduction of additional evidence,[3] the board again denied a certificate of eviction to the landlord. The landlord filed a new complaint for judicial review of the board's decision in the Municipal Court of Brookline.[4] The Municipal Court judge again upheld the board, finding that there was substantial evidence to support the board's decision. For the second time, the landlord claimed a report to the Appellate Division. The Appellate Division reversed the judg-

---

[3] The landlord objected to the board's taking of additional evidence. The landlord points to no language in the Appellate Division's opinion suggesting any special limitation upon the board's discretion as to how it should proceed to reach the findings omitted in its earlier decision. The opinion quite explicitly required the board to make "additional findings" and to undertake "further proceedings." Indeed, the Appellate Division itself later held that the taking of additional evidence was proper.

To honor the mandate of the Appellate Division, the board had the discretion to take new evidence. This discretion is consistent with the requirement of G. L. c. 30A, § 14, that the reviewing court give due weight to the discretionary authority conferred upon an agency. "Absent constitutional constraints or extremely compelling circumstances the 'administrative agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." ' FCC v. Schreiber, 381 U.S. [279, 290 (1965)], quoting from FCC v. Pottsville Broadcasting Co., 309 U.S. [134, 143 (1940)]." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 543-544 (1978).

[4] The Municipal Court judge consolidated the two cases, deeming the records in each case as "The Official Record" for all purposes.

ment of the Municipal Court and directed the board to issue a certificate of eviction. The board and the tenant appealed to this court. See G. L. c. 231, § 109. We reverse the decision of the Appellate Division.

We summarize the facts. The tenant has been a tenant-at-will in his apartment since 1970. The apartment is the last unsold unit in a rent-controlled property converted into condominiums in 1978. The landlord acquired the property in 1973, and since then the tenant consistently paid his rent after the first of the month. During the period December, 1978, through September 4, 1979, the landlord and tenant had a series of conversations concerning the purchase of the tenant's apartment. In the course of these conversations, the landlord never discussed the subject of late rental payment, though the landlord did send the tenant written notices of late payment from time to time. On September 11, 1979, after the tenant had announced publicly that he would not purchase his apartment, the landlord filed an application for a certificate of eviction, alleging that the tenant consistently had paid his rent late. While this application was pending, the landlord had a conversation with the tenant in which the possibility of the tenant's purchase of the apartment was discussed again. During this conversation, the tenant promised to pay the rent on time. The landlord then withdrew the application for a certificate of eviction. Negotiations for the purchase of the apartment resumed during the period January, 1980, through April, 1980. During April, 1980, these negotiations broke down, and the landlord filed the present application on April 24, 1980.

Section 9 (a) of art. XXXVIII of the by-laws of the town of Brookline provides: "No person shall bring any action to recover possession of a controlled rental unit unless: . . . (10) the landlord seeks to recover possession for any other just cause, provided that his purpose is not in conflict with the provisions and purposes of the rent control by-law; and provided that the recording of a master deed for a condominium in conformance with the provisions of Chapter 183A of the General Laws, . . . the sale or offering for sale of any unit therein, or any condition incidental to such recording, sale, or

offering for sale shall not be deemed just cause hereunder." See *Grace* v. *Brookline,* 379 Mass. 43 (1979) (upholding the validity of these by-laws). On remand the board found that, although chronic and consistent late payment of rent is just cause under § 9 (a) (10) of the by-laws, the landlord's purpose in seeking eviction was in conflict with the rent control by-law because his primary objective was to obtain possession so that he could sell the apartment. The landlord's motivation in filing the application to secure possession was not because of the late payment of rent. The board found that the landlord's "real purpose and intention in [seeking eviction] . . . was to obtain possession of . . . the only remaining unsold condominium unit in the building." The Appellate Division held that these conclusions were unsupported by substantial evidence, and that the landlord's forbearance of his right to receive timely rental payments did not constitute evidence of an illicit purpose. See *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 347 (1947) (construing St. 1970, c. 842). Cf. *Decker* v. *Boston Rent Bd.,* 13 Mass. App. Ct. 907 (1982).

Pursuant to St. 1970, c. 843, § 4, we review the board's action as if it were a State agency's action, and we are required to give "due weight to the experience, technical competence, and specialized knowledge of the [board], as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). We have described the substantial evidence standard applied in review of decisions by administrative agencies as "such evidence as a reasonable mind might accept as adequate to support a conclusion." See, e.g., *Moulton* v. *Brookline Rent Control Bd.,* 385 Mass. 228, 233 (1982), quoting G. L. c. 30A, § 1 (6). "While we must consider the entire record, and must take into account whatever in the record detracts from the weight of the agency's opinion, *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966), as long as there is substantial evidence to support the determination of the agency, we will not substitute our views of the facts." *Id.*

A landlord has a right to seek to evict a tenant who is in arrears on payment of rent. See *Gentile* v. *Rent Control Bd. of Somerville, supra*; *DeWolfe* v. *Roberts,* 229 Mass. 410

(1918). Here, however, there was evidence before the board showing that the landlord brought applications for eviction only when the tenant stated that he would not buy, or when negotiations broke down, and that the landlord withdrew his first application because the tenant had expressed again an interest in buying. Aside from written notices, the landlord exhibited to the tenant little concern with the lateness of rental payments, concentrating instead on purchase negotiations. Such behavior supports a finding that the primary concern of the landlord was not promptness of rental payments but sale of the apartment. The board was warranted in concluding that this illicit purpose to avoid the restrictions of § 9 (a) of art. XXXVIII of the by-laws was exposed by the landlord's actions: Commencement of eviction proceedings upon breakdown of negotiations, or the tenant's statement that he would not buy, and dismissal of the same, once negotiations resumed. We conclude that the board's decision is supported by substantial evidence.[5] There was no error of law. See *Decker* v. *Boston Rent Bd., supra.* Accordingly, we reverse the order of the Appellate Division.

*So ordered.*

---

[5] The tenant argues that both decisions of the Appellate Division are reviewable. See *Alves* v. *Picard,* 337 Mass. 77, 78-79 (1958); *Weiner* v. *Pictorial Paper Package Corp.,* 303 Mass. 123, 128-129 (1939). Regardless of the validity of this contention, we need not examine the first decision because we have found error in the second.