Black, P. J.
This is an action for appellate review of a j udge’s order affirming denial of a Certifícate of Eviction to the plaintiff-landlord, Vladimir Volloch, by the defendant, The Brookline Rent Control Board.
The appellate record discloses that the plaintiff-landlord filed an Application For Certificate Of Eviction with the Brookline Rent Control Board on December 19,1984, with respect to premises located at 75 Park Street. In his application, the plaintiff-landlord stated that he sought to recover the premises “in good faith” for his own use and occupancy. A hearing on the application was held on January 21, 1985. The Official Record of the proceeding reflects the fact that the plaintiff-landlord and his wife acquired the premises located at 75 Park Street in 1979. They had resided in one of the apartments located in the building, which was identified as apartment #4. Apartment #5 is next door to apartment #4 and at the time the plaintiffs acquired the premises, they acquired apartment #5 for Mrs. Volloch’s mother (Mrs. Rits), who occupied that apartment from 1979 to 1982. Mrs. Rits has a son, who also lives in Brookline with his wife and child. Shortly after the birth of her granddaughter, Mrs. Rits moved in with her son and his wife to care for the infant. The plain tiff-landlord asserts that this was a temporary measure in that Mrs. Rits intended to return when the child became two years old. The apartment was subsequently advertised for rent and Ann Karnofsky became tenant there in January, 1984. The plaintiff-landlord further asserts that Ms. Karnofsky said that she only needed the apartment for a short time and that it' was on this basis that the apartment was leased to her. In November of 1984, the plaintiff-landlord notified the tenant that his mother-in-law would be returning to the apartment in January 1985. Ms. Karnofsky declined to relocate and Mr. Volloch sought to have her evicted. There is no question regarding timely payment of the rent due.
On cross-examination, the plaintiff-landlord acknowledged that he had charged Ms. Karnofsky $385 per month. He further acknowledged that, as a result of an injury by her to the Brookline Rent Control Board, he had been notified that the Karnofsky apartment was subject to rent control and that he had been overcharging her, in that the maximum rent that could have been charged was $309. The overcharge was subsequently set-off against the *73 following month’s rent. He also acknowledged that there had been a roof leak that had affected Ms. Karnofsky’s apartment and that her stove malfunctioned.
Ms. Ann Karnofsky testified that she was never told that the plaintiff-landlord’s mother-in-law had moved out to care for a grandchild, or that she planned to return. She related that she had spent nearly $1,000 to make the apartment livable and had two grand pianos and one upright piano in the apartment. She further stated that she had difficulty in paying the rent and sought a subsidy, at which time she discovered the apartment was subject to rent control and that she was being overcharged. She notified the landlord and shortly thereafter was told by him to look for another apartment. She noted that she had paid a roofer in connection with a ceiling leak in the bathroom, and when she had an appliance person come to fix the stove, was told that it was an “antique” and parts were no longer available. The plaintiff-landlord had furnished her a toaster-oven as a replacement. She reported that she had gone to the Health Department and that a registered letter had been sent to the landlord, which had not been picked-up and that the Health Department had commenced legal action against the landlord. Following the report of the matter to the Health Department, she claimed that the landlord threatened her to the point where she called the police. The landlord is also said to have threatened to report her to the Internal Revenue Service.
Following the hearing, the Brookline Rent Control Board made the following findings of fact.
1. V. and S.R. Volloch purchased Units 4 and 5 at 75 Park Street on October 29, 1979.
2. The owners moved into Unit 4, and Mrs. Vollochs mother, Mrs. Rits, moved into Unit 5, a studio apartment, in October, 1979.
3. The owners, Mr. and Mrs. Volloch, currently reside in Unit 4, at 75 Park Street.
4. The owner’s mothervacated Unit 5, on December 1,1982, at which time she moved in with her son who resides on Griggs Road, to care for his then new born infant daughter.
5. At the time of the mother’s decision to move in with her son, the Vollochs advertised her apartment for rent.
6. Ann Karnofsky began occupying the unit on January 1, 1984 as a tenant at will.
7. The tenant moved in 3 pianos and proceeded to customize the apartment for her use.
8. The tenant put down carpeting and set up an area in the kitchen to use as a bedroom so that she would use the main room of this studio apartment to give piano lessons.
9. In July, 1984, the tenant applied for subsidy through the Brookline Housing Authority and at that time found out that the unit should be subject to rent control.
10. Based on the tenants inquiry to the Rent Control Board, the landlord was notified and he subsequently filed for an application for certificate of exemption for Units 4 and 5.
11. The Rent Control Board issued an exemption for Unit 4 but denied the exemption for Unit 5, and a rent was set for that unit.
12. The legal monthly maximum rent for said unit was $309 per month for 1984. The landlord had been charging the tenant $385 per month.
13. The tenant deducted the overcharges from the subsequent 2 month’s rental payments to eliminate the amount owed her.
14. The tenant had complaints regarding a water leak and a broken oven *74 in her apartment.
15. The landlord purchased a free standing counter oven which the tenant did not find suitable and did not accept.
16. The oven in the stove was never repaired by the landlord.
17. The water leak was- subsequently repaired by the landlord.
18. The tenant did not move in with the knowledge or intent that hei tenancy would be restricted to a specific period of time.
19. The owner failed to establish that he seeks the apartment in good faith for his mother’s use and occupancy.
20. The Board finds that the tenant’s complaints and inquires regarding the rent control status of the unit, precipitated the landlord’s seeking an eviction of this tenant.
21. The landlord presented no clear and convincing evidence to rebut the presumption that his application for certificate of eviction, was not a reprisal against the tenant for those actions.
22. The Board finds that the landlord does not seek to recover possession of the apartment in good faith for the use and occupancy of his mother-in-law.
Clearly the only issues presented for appellate review are whether the Board’s decision is supported by substantial evidence and not based upon any error of law, Kahn v. Brookline Rent Control Board, 394 Mass. 709 (1985); Entis v. Brookline Rent Control Board, 1985 Mass. App. Div. 202, 205; Paula Wood-Dyer v. Brookline Rent Control Board, 1983 Mass. App. Div. 50. Under Section 9 (a) (8) of the Brookline Rent and Eviction Control By-Law,[2] the landlord has the burden of proving that he “in good faith” seeks to recover possession of the premises for “use and occupancy of himself or his children, parents, brother, sister, father-in-law, mother-in-law, son-in-law, or daughter-in-law. ...” and this must be proved by a preponderance of the evidence. Decker v. Boston Rent Board, et al, 13 Mass. App. 901, 907 (1982). As sole finder of fact, the Brookline Rent Control Board has the prerogative of assessing the credibility of all of the witnesses, and the right to disbelieve, in whole or in part, the testimony of any witness. Fisgeyer v. Brookline Rent Control Board, et al, 1983 Mass. App. Div. 357. Additionally, we are required to give due weight to the experience, technical competence, and special knowledge of the Board, as well as to the discretionary authority conferred upon it. G.L.c. 30A, § 14 (7), Kahn v. Brookline Rent Control Board, supra, 712.
In reviewing the entire record, and more particularly the evidence therein-before summarized, we are persuaded that the Board’s factual determinations are supported by substantial evidence. We will not substitute our views of the facts.
We would hasten to add, however, that the Board’s finding of fact #21 is clearly predicated upon an error of law, as was pointed out in the “Memorandum of Decision” by the reviewing Justice in the Brookline Division. Finding #21 states:
“21. The landlord presented no clear and convincing evidence to rebut the presumption that his application for a certificate of eviction was not a reprisal against the tenant for those actions.”
The Board’s finding is contrary to our ruling in Post, Trustee v. Brookline Rent Control Board, 1984 Mass. App. Div. 251. Nevertheless, in this particular-instance, we find this to be harmless error in light of the Board’s finding #19, *75 namely, that ‘The owner failed to establish that he seeks the apartment in good faith for his mother’s use and occupancy.” Finding #19 is sufficient, by itself, to warrant denial of the plaintiff-landlord’s application for a Certificate of Eviction. The two findings are independent of each other, so that finding #19 is not “tainted” by the error of law upon which Finding #21 is based. Parenthetically, it might be added that the plaintiff-landlord’s counsel in oral argument acknowledged that these findings are totally independent of each other.
The decision of the Brookline Rent Control Board’s denying the plaintiff-landlord’s application for a Certificate of Eviction and the decision of the reviewing Justice sustaining that decision are both affirmed.

 Article XXXVIII of the By-Laws of the Town of Brookline.