Black, P.J.
This is an action brought by the plaintiff-landlord, Donald Chayet (hereinafter referred to as “the landlord”), pursuant to G. L. c. 30A for judicial review of a decision of the defendant, Brookline Rent Control Board (hereinafter referred to as “the Board”), denying the landlord a Certificate of Eviction as to the defendant-tenant, Leo Waldman (hereinafter referred to as “the tenant”). The Board’s decision was reviewed and affirmed by ajudge of the Brookline Division by judgment entered on May 27, 1987.
Briefly stated, the appellate record discloses that on April 15, 1986, the landlord applied for a Certificate of Eviction as to the tenant with respect to Apartment #3 located at 1807 Beacon Street, Brookline, Massachusetts, on the grounds that the tenant’s rent checks for October of 1985 and February of 1986 were returned for insufficient funds and because the tenant had flooded his bathroom four (4) different times between March 22, 1986 and April 7, 1986, damaging the floor and sub-floor of Apartment #3, and the ceiling of Apartment #2. An adjudicatory hearing was held before a hearing examiner on May 16, 1986 and May 30,1986. After reviewing the evidence, the Board voted to deny the application on November 12, 1986. There was evidence tending to show that the tenant and a Joyce Miller had moved into Apartment #3 at the same time, approximately twelve and one-half years before, and had continually occupied the said apartment since then. On or about March 27 or March 28,1986, Ms. Miller’s bathtub overflowed while she was on the telephone and the water caused some damage to the second floor apartment located directly below. Again, on March 30th the landlord, who lives with his wife on the second floor, heard running water late at night and discovered water running through their bathroom ceiling from the third floor apartment (#3) directly above. Apparently, Ms. Miller fell asleep in the bathtub on this occasion with the water running. Similarly, on April 7,1986, about 6:30 a.m. water was discovered coming through the second floor bathroom ceiling from the bathroom above. On this occasion, Ms. Miller indicated that there may have been a problem with the bathtub drain. That same evening around 6:35 p.m. water was again found coming through the ceiling from the third floor apartment. A plumber was called by the landlord and found the bathtub drain *49 clogged with hair. A Brookline Health Department inspector later found no evidence of damage in the tenant’s apartment and was not permitted access by the landlord to ascertain what damage, if any, had been caused in the landlord’s apartment. Except for these three or four incidents, all of which occurred within approximately a span of ten days, there were no problems with water overflowing in the third floor bathtub during the prior twelve and one-half years, and no additional problems were experienced between March and April of 1986, and the May 30,1986 hearing before the Hearing Examiner. As regards to the rent checks, several checks given the landlord by the tenant had been returned for insufficient funds, but eventually all had been paid in full and accepted by the landlord.
The Board made the following findings of fact:
1. The landlord presented no evidence in regard to non-payment of rent.
2.1807 Beacon Street is a four unit building owned by Eleanor and Donald Chayet who occupy Apartment #2 at the property.
3. Leo Waldman and Joyce Miller are tenants-at-will who have occupied Apartment #3 at 1807 Beacon Street since 1974.
4. On or about March 27, 1986, the tenant, Joyce Miller, unintentionally permitted running water to overflow from the bathtub while taking a bath.
6.On or about March 30,1986, the tenant, Joyce Miller, again unintentionally permitted running water to overflow from the bathtub while taking a bath.
6. The Board finds that the overflow drain in the bathtub was clogged and was the probable cause of the water overflowing.
7. On or about April 7,1986, at 6:30 a.m. water came into the second floor bathroom through the ceiling.
8. On all three occasions cited in findings of fact 3,4 and 5, water dripped through to the second floor bathroom and damaged the plaster ceiling and dropped ceiling tiles of Apartment #2.
9. On March 30, 1986 and April 7, 1986 water also stained the.drppped ceiling tiles in the first floor bathroom.
10. A Brookline Health Department inspector, on May 6, 1986, found no evidence of water damage in the bathroom of Apartment #3.
11. At some time after March 30, 1986, the overflow drain in the tenant’s bathtub, which was clogged, was cleaned out by the tenant.
12. From April 7,1986 through May 30,1986, the date of the second hearing, there was no evidence of any further leaks from the tenant’s bathroom into the landlord’s bathroom.
13. Other than on the three dates when there was some damage caused by the bathtub overflow, the tenants are not now causing any substantial damage to the premises.
The landlord’s application for a Certificate of Eviction in this case was treated by the Board as coming under Section 9(a) (3) of the Brookline Rent and Eviction Control By-Law (Article XXXVIII of the By-Laws of the Town of Brookline).[2] In applying this provision to the factual issues presented, the Board concluded that:
“Damage, caused by the tenant’s unintentional overflowing of a bathtub on three occasions within a one to two month period, and which damage was abated, was not a continuing nuisance and did not constitute the committing *50 or permitting of substantial damage because it had ceased.”
The trial judge affirmed the Board’s denial of the landlord’s applications for a Certificate of Eviction on totally independent grounds, namely because the landlord had commenced the action against only one of two co-tenants and there was no substantial evidence before the Board of any wrong-doing by the named party.
From a factual standpoint, the appellate record clearly contains substantial evidence in support of each and every one of the Board’s findings. Obviously, as long as there is substantial evidence to support the determination of the Board, we would not substitute over views of the facts, in any event [Moulton v. Brookline Rent Control Board, 385 Mass. 228, 233 (1982)]. In this instance, however, the critical issue involves interpretation of Section 9(a) (3) of the By-Law. The Board placed heavy emphasis on the use of the word “is” throughout subsection (3), as requiring an on-going situation existing at the time of the hearing before the hearing examiner. We believe that the Board was warranted in its conclusion. Its interpretation appears to be a reasonable construction of a By-Law with which it is familiar and as to which it has particular expertise [see Kahn v. Brookline Rent Control Board, 394 Mass. 709 (1985)]. Even if Section 9(a) (3) were not construed as requiring an on-going condition, the Board might have properly concluded that upon the facts found, none of the requirements of subsection (3) had been satisfied. Nevertheless, we find no error of law in the Board’s interpretation of the By-Law.
Finally, as regards to the trial judge’s affirmation of the Board’s decision on independent grounds, namely that the action was commenced against only one of two co-tenants as to whom there was no substantial evidence before the Board of any wrong-doing by the named party, we find no error. From the appellate record, there appears to be ample evidence that both Leo Waldman and Joyce Miller had been co-tenants at-will in the third floor apartment for well over twelve years. Parenthetically, it might be added that in oral argument, appellate counsel for the landlord did not contend that the Board’s finding #3 was not supported by substantial evidence. The record also shows that none of the events giving rise to the overflow of the third floor bathtub on three or four occasions in question could be attributed to any fault on the part of Leo Waldman.
The decision of the Brookline Rent Control Board as well as the judgment of the trial judge are affirmed.

 Section 9. Evictions, (a) No person shall bring any action to recover possession of a controlled rental unit unless:
* * * (3) the tenant is committing or permitting to exist a nuisance in, or is causing substantial damage to, the controlled rental unit, or is creating a substantial interference with the comfort, safety or enjoyment of the landlord or other occupants of the same or any adjacent accommodation.* * *