Black, P. J.
This is an action brought by the plaintiff-landlord Bessie Slavin d/b/a Summit Realty Trust (hereinafter referred to as “the landlord”), pursuant to G.L. c. 30A for judicial review of a decision of the defendant, Rent Control Board of Brookline (hereinafter referred to as “the Board”), denying the landlord’s application for a Certificate of Eviction pursuant to Section 9(a)(2) of the Brookline Rent and Eviction By-Law (Article XXXVIII of the By-Laws of the Town of Brookline hereinafter referred to as “the By-Law”) as to the defendant-tenant, Barry Myers (hereinafter referred to as “the tenant”), on the grounds, inter alia, that the tenant did not commit a breach of the lease covenant prohibiting occupancy by unauthorized roommates due to the fact that the landlord had unreasonably withheld such authorization. The plaintiff subsequently sought judicial review of the Board’s decision in the Brookline Division. By Memorandum of Decision dated September 30,1987, a justice of that court reversed and annulled the Board’s decision. The Board, claiming to be aggrieved by the judgment of the court, has sought appellate review of the court’s determination.
There .is also a procedural aspect to this case in that on October 14,1987, the Board filed a Motion to Extend Time for Filing a Draft Report','which motion had been assented to by .the landlord’s attorney and which was allowed by a justice of the Brookline Division. The draft report was filed October 20, 1987, and a hearing thereon was held November 20, 1987. On November 25,1987, the plaintiff filed a Motion to Dismiss the Report on the' grounds that no claim of report had been filed as required by Dist./Mun. Cts'. R. Civ. P., Rule 64 (c)(l)(i). The trial judge dehiedthe motion and the réport. was ultimately settled. Counsel for the landlord asserts that the feqiii’fémérit’ that a claim or request for a report be filed within ten days.Of theert'ii&bf' judgment is jurisdictional and could not have been assented tó since it is well *144 recognized that a draft report is deemed to include a request for a report only when filed within ten days from the entry of judgment (See 8A J. SMITH & H. ZOBEL, MASSACHUSETTS PRACTICE 43 (1981). While we believe that compliance with the procedural requirements of Rule 64 (c)(l)(i) is jurisdictional, we would also point out that the function of a claim or request for a report is to put everyone on notice of a party’s intention to appeal. Viewed in this light, we would regard a Motion to Extend the Time for Filing of a Draft Report filed within ten days of the date that judgment was entered as the functional equivalent of the claim or request for a report. Consequently, the trial judge properly ruled upon the plaintiffs Motion to Dismiss, albeit for different reasons.
As regards the merits of the case, the record discloses that on August 1, 1986, the landlord applied for a Certificate of Eviction as to Apartment 1A at 9 Summit Avenue, Brookline, Massachusetts, upon the grounds that the tenant had violated an obligation or covenant of his tenancy other than the obligation to surrender possession upon proper notice and had failed to cure such violation after having received written notice thereof from the landlord. Specifically, the landlord alleged that the tenant had allowed unauthorized occupants to reside in the premises contrary to the terms of his tenancy and despite written notice not to do so. A hearing was held on the application September 12,1986, at which the landlord introduced into evidence a copy of the written lease between the landlord and the tenant. By its terms, the tenant agreed not to assign or sublet any part or the whole of the premises, nor allow the premises to be occupied other than for a temporary visit (except spousés and children) without the prior written permission of the landlord. A rental agent’s form was also introduced which showed that the tenant had been given a summary of the terms and conditions of the lease which also explicitly stated that occupancy was limited to the persons designated on the lease. Although the lease covered the tenant and a co-tenant, the co-tenant subsequently vacated the premises and notified the landlord of his intention to leave. Thereafter the tenant allowed a woman to be his “guest” for a period of time. Consequently, the landlord filed for a Certificate of Eviction. However, she vacated the premises shortly before the scheduled hearing before the Board. Another woman subsequently moved into the premises and continued to reside there without the permission of the landlord. There was evidence of various checks having been written by the new person occupying the premises which could have represented rent payments to the tenant. The property manager of the building testified that he had notified the tenant that he would not be allowed to have anyone else occupy the apartment after the original co-tenant vacated the premises. He also testified that it was the landlord’s policy to allow persons to move into various apartments provided they met certain requirements. However, he asserted that the landlord had the absolute right to refuse a tenant permission to take in a new roommate. On July 23, 1986, a letter was sent to the tenant notifying him that he was in violation of the terms of his lease and that the unauthorized person sharing the apartment was to vacate the premises.
As a consequence of the hearing, the Board made the following findings of fact and determinations of law:
Determination of Issues of Fact:
1. 9 Summit Avenue is a 19 unit building owned by Summit Realty Trust and managed by Richard Diamond.
2. Barry Myers is a tenant-at-will at Unit #1 A, 9 Summit Avenue.
*145 3. On July 8,1985, Barry Myers and his then-roommate, Jay Edgerton, entered into a written tenancy-at-will agreement with Summit Realty Trust for the period commencing on August 1, 1985, the agreement stipulated that the tenants could not sublet the premises without obtaining the written assent of the landlord and that occupancy is limited to the named lessees only.
4. In December, 1985, Mr. Myers filed a tenant petition with the Brookline Rent Control Board.
5. After notifying Mr. and Mrs. Slavin of his intention to terminate his tenancy by letter dated February 20,1986, Mr. Edgerton moved out of Unit #1A on March 15,1986.
6. Around the time of Mr. Edgerton’s leaving the unit, Mr. Diamond-informed Mr. Myers that he would be allowed to remain in the unit, but would not be permitted to bring in another roommate, so that Mr. Myers reasonably believed that it would be futile to present a new roommate to be screened by the landlord or his agent.
7. .Mr. Diamond testified that he has the right to unequivocally and unreasonably refuse a tenant permission to take a new roommate.
8. Mr. Diamond testified that, although such situations do not arise that often, when they are so inclined, the landlord will direct a prospective tenant to go to one of their agents and fill out an application for screening purposes; if they qualify, the existing lease or tenancy-at-will would become void and a new one covering both parties would be written.
9. On April 18,1986, the landlord filed an application for a certificate of eviction alleging that Barry Myers sublet the apartment to Elizabeth Laver without the assent of the landlord.
10. Said application was withdrawn after Ms. Laver vacated the premises.
11. In June or July of 1986; Melanie Diette began to occupy Unit #1A with Mr. Myers.
12. On July 23,1986, the landlord sent a letter to Mr. Myers regarding an unauthorized occupancy of Unit #1A and requesting information as to the identity of the party sharing the apartment, the circumstances of the arrangement and when she would be vacating the unit.
13. On July 2,1986, Ms. Diette gave Mr. Myers a money order for $170.; on July 28,1986, Ms. Diette give Mr. Myers a money order for $200.; on August 1, 1986, Ms. Diette gave Mr. Myers a money order for $100.; On September 2, 1986, Ms. Diette gave Mr. Myers a money order for $260.
14. Ms. Diette gave Mr. Myers the above money order in exchange for his letting her stay in the apartment and as such, constituted payment or rent.
15. Ms. Diette’s Public Library card lists her address as 9 Summit Avenue.
16. An address search by the United States Post Office dated September 5, 1986 and requested by the landlord indicated that Melanie Diette was receiving mail at 9 Summit Avenue, Unit #1A.
17. Melanie Diette is currently a tenant in Unit #1A, 9 Summit Avenue.
Determination of Law.
1. The Board finds that where a covenant of tenancy precludes assignment or subletting without the assent of the landlord, there is an implied agreement on the part of the landlord to at least consider *146 prospective tenants and not withhold consent unreasonably or unequivocally.
2. The Board finds that a tenant who has categorically been denied permission ever to take on a new roommate cannot be considered to have breached a covenant of his tenancy where the landlord denied his consent in an unreasonable manner.
In his Memorandum of Decision, the trial judge ruled that the Board had not only misapplied the prevailing law of the Commonwealth regarding the landlord’s right to withhold assent to a sub-tenancy without offering a reason, particularly where the landlord lias specifically reserved that right in the written lease between himself and the tenant, but that the Board had exceeded its authority as an administrative agency. He further held that in light of Post Trust v. Brookline Rent Control Board, et al., 1984 Mass. App. Div. 251 (1984), the Board is in error by even passing upon the legal issue of the reasonableness of the landlord’s conduct. We agree on both points. As to the landlord’s rights under a written lease, see Healthco Inc. v. E & S Realty Associates, 400 Mass. 700 (1987). Regarding the scope of the Board’s authority, under section 9(a)(2) of the By-Law, it is empowéred to make determinations relative to whether the_tenant has “violated an obligation or covenant of his tenancy . . . and has failed to cure such violation after having received written notice thereof from the landlord.” Of necessity, the Board is required to make factual determinations as to whether (1) there are any obligations or convenants imposed upon the tenant in the lease agreement; (2) the tenant has breached any such obligation or covenant; (3) the landlord has given notice to the tenant to cure the violation; and, (4) the tenant has failed to cure the violation. Such findings of fact would ordinarily be affirmed upon judicial review, if supported by substantial evidence Chayet v. Rent Control Board of Brookline, 1988 Mass. App. Div. 48, 50). The Board is not, however, authorized to make determinations concerning matters of law, such as affirmative defenses available to a tenant in a summary process proceeding (Volloch v. Rent Control Board of Brookline, 1986 Mass. App. Div. 72, 74-75, Slavin v. Rent Control Board of Brookline, 1987 Mass. App. Div. 168, 171), or to rule upon the sufficiency of rent notices (Jacobs v. Brookline Rent Control Board, 1988 Mass. App. Div. 81, 83). Therefore, in terms of Section 9(a)(2) of the By-Law, the Board’s function is to determine whether the applicant has satisfied the above enumerated threshold requirements so as to be entitled to a Certificate of Eviction, thereby allowing the applicant to proceed to initiate a summary'process action in the District Court, where any legal issues presented in the case maybe properly heard. In short, since Post, this court has consistently held that the Board lacks the authority to consider such legal issues. The Board is not a Housing Court, and a fortiori may not usurp the functions of a court of law. The Jacobs case is the most recent in a growing line of cases of this effect.
We should hasten to add that it is patently unfair to applicants for Certificate of Eviction to have the Board continue to attempt to exercise judicial functions and to apply principles of law which this court has ruled to be clearly erroneous as a matter of law, the consequence of which is to cause applicants to bear the inherent delay and expense of judicial review of their cases. Accordingly, pursuant to the authority conferred upon this court by G. L.c.231, §108, Dist./Mun. Cts. R. Civ. P., rule 64 (i), and G.L. c. 185C, §3, the Board is hereby ordered to pay double costs and reasonable attorney’s fees attendant' to judicial review of this case by the Appellate Division to the *147 appellant.[3] Perhaps we should also point out that by virtue of c. 755 of the Acts of 1987, as presently reflected in G.L. c. 185C, §3, District Courts, including the Appellate Division, now have broad equity powers in relation to landlord-tenant proceedings. Presumably, these powers extend to proceedings before the Board which are subject to judicial review.
Finally, the decision of the trial judge annulling the Board’s decision and ordering issuance of the Certificate of Eviction is affirmed. It is further ordered that the Board issue the Certificate of Eviction to the landlord forthwith, subject of course to further appellate review.

Counsel for the appellant may file an appropriate motion with supporting affidavit for the allowance for reasonable attorney’s fees incident to a judicial review of this case by the Appellate Division with the Clerk.