Aguiar, J.
This appeal raises the issue of whether the court erred in reversing the judgment of the Board that granted the landlord a certificate of eviction. The Board ruled that landlord was entitled to such a certificate because of the tenant’s consistent late payments. The court ruled that the continued acceptance by the landlord, without reservation, of the tenant’s late rent payments constituted a waiver of his right to insist upon forfeiture. We need not consider most of tenant’s other claims of error for the reason that we hold that the Board committed no error in ruling that the landlord was entitled to a certificate of eviction because of tenant’s late rent payments.
The evidence tended to show the following facts: The landlord, James Donohue, purchased 38 Browne Street, Unit 5 on or about March, 1990. The tenant, Charlyn Burton-Goldman, had been a tenant in the said unit since 1978. Burton-Goldman has a long history of paying her rent later than the first day of the month. In 1982, the former landlord, Carleton Arms Corp., Bruce Roberts, Trustee, filed an application for a certificate of eviction against the tenant alleging inter alia “other just cause” based on her extended pattern of late payment of rent. At the 1982 hearing, the former landlord introduced into evidence notices to quit and four letters which the former landlord had "written to the tenant about her late payment of rent. The Board denied the application on technical grounds. The Board made no finding that the rent was thereafter due on a day other than the first of the month.
After the landlord purchased the unit in March 1990, he called the tenant a number of times about her late payment of rent. On April 5,1990 the landlord wrote to the tenant advising her to “comply with the terms of her tenancy by making your monthly payments on the first day of each month.” On January 7,1991 the landlord wrote to the tenant again, reminding her that her rent is due on the first of the month. Although she maintains that her rent is not due on the first day of the month, the tenant refused to pay the 1991 increase in rent in January 1991 because she did not receive the notice of rent increase prior to December 1,1990.
In the end of November 1991, the tenant started having problems with the heat *93 in her unit. On December 5,1991, at 1:30 EM., the Brookline Health Department inspected 38 Browne St., #5 and found that the landlord had violated the State Sanitary Code because the heat in the bathroom and bedroom was two degrees below what was required by the Code. On December 5,1991 at 4:00 P.M. the tenant left a message for the landlord on his answering machine, requesting that the landlord bring her a space heater. The tenant stated that she would be available for a return telephone call for the next two hours, that she would turn on her answering machine after the two hours, but that the landlord should bring the space heater anyway because she would be home. The landlord received the tenant’s message at 5:00 P.M. that day and called the tenant. When the landlord called the tenant, the tenant’s answering service, rather than the tenant, answered the call. The landlord went to the tenant’s unit at 5:15 P.M. but there was no answer at the door. On December 6,1991 at the request of the landlord a serviceman came to the building but was unable to gain access to the tenant’s unit at around 7:30 P.M.
On December 10, 1991, the tenant left the landlord a message informing him that the heat was better that day and asking whether the landlord had fixed the problem. The landlord understood the tenant’s message to mean that there was no longer a heating problem.
On December 16, 1991, the tenant sent the landlord a full rent check for the December rent. The check was dated December 10,1991. The Health Department reinspected the unit on December 18,1991 at 9:15 P.M. and noted the same temperature readings as taken at the earlier inspection. The landlord was notified of the second Sanitary Code violation on December 19,1991. On December 20,1991, the tenant purchased a space heater for $94.48. The landlord and the tenant were unable to work out a mutually agreeable time for repairmen to check the heating problem and the problem disappeared on its own.
The tenant withheld $125.48 from her January 1992 rent payment by deducting the price of the space heater ($94.48) and by not paying the increase in the maximum controlled rent for 1992 ($31.00). On January 3, 1992, the Health Department reinspected the unit and noted compliance. There have been no subsequent problems with the heat.
On February 3,1992, the landlord filed an application for certificate of eviction alleging nonpayment of rent and denial of reasonable access. At the hearing, after hearing evidence regarding the tenant’s rent payment history, the hearing examiner asked the landlord whether he wished to amend his application to allege consistent late payment of rent. The landlord, who was not represented by counsel, so amended his application. After two further hearings, on February 19, 1993, the Board issued its decision finding that the tenant was entitled to not pay the 1992 increase in rent for January 1992 ($31.00) because there was an outstanding Sanitary Code violation; finding that the value of the unit was diminished by five percent for the 21 days (12/5/92-12/9/92,12/18/92-1/2/93) ($22.00) in which there was a Code violation and in which the landlord had notice that there was a continuing problem with the heat; and finding that the tenant owes the landlord $72.48 in unpaid rent. The Board also found that the tenant had accrued in excess of 100 late payment days in any relevant time period. The Board thus issued a certificate of eviction on the grounds of nonpayment of rent and consistent late payment of rent.
On or about March 19,1993 tenant filed a complaint for judicial review seeking to reverse the Board’s decision. The court found that “the consistent acceptance, without reservation, of tenant’s late rental payments which continued without substantial interruption from the inception of her tenancy to at least June 3,1992 constituted a waiver by landlord of his right to insist upon forfeiture for late payments made on or prior to that date. Landlord cannot sit for so long upon his legal rights, lulling tenant into the belief that, despite his words, her late payments would be accepted without legal consequence and then use the conduct which he permitted *94 to continue as the basis for her eviction.” The court reversed the decision of the Board granting landlord a certificate of eviction.
The court should have given due weight to the Board’s determination of the facts concerning the issue of waiver of late rental payments. The Board found that there was no waiver by the landlord. That was a decision on the facts. That decision should not have been reversed as long as there was substantial evidence to support the determination of the Board. The court should not have substituted its view of the facts. Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966).
The decisions of the Brookline Rent Control Board are reviewable as if the Board were a state agency and the courts are required to give due weight to the experience, technical competence and specialized knowledge of the Board, as well as to the discretionary authority conferred upon it: G.L. Chapter 30A, Section 14(7). Kahn v. Brookline Rent Control Board, 394 Mass. 709, 712 (1985). The Board’s decisions are reviewed to determine if they are supported by substantial evidence and if they are legally justifiable. Sherman v. Rent Control Board of Brookline. 367 Mass. 1, 10 (1975).
Nonpayment of rent and late payment of rent are different. A lack of a reservation concerning accepting subsequent rent payments after a situation when eviction has been started for non payment of rent may reinstate the tenancy. Nonpayment of rent is a ground for eviction and is complete when it occurs. Late payment of rent does not become a ground for an application of eviction until the violation occurs on a continuing basis covering over 100 late days in a twelve month period. Waiver is more difficult concerning late payment of rent.
The right of a landlord to have his rent paid on time is a fundamental one and was upheld in Gentile v. Rent Control Board of Somerville, 365 Mass. 343, 347 (1974). The appellate division has recognized the right of the Board to define consistent late payment of rent by regulation as a “just cause” under Section 6(a) (9) of the rent control by-law. Testa v. Brookline Rent Control Board, 1991 Mass. App. Div. 176, 177. Judgment affirmed. 34 Mass. App. Ct. 1120 (1993). Rule 1.04(F) of the Board’s Rules defines “consistent late payment of rent” as rent which is paid on a day other than the agreed upon date and where such late rent “totals one hundred (100) days or more late in the twelve (12) month period immediately preceding the filing of the application or the twelve month period prior to the close of evidence in the proceeding.” (R. 314). No matter which time period is selected there is substantial evidence in the record that the tenant’s late rent payments totaled more than one hundred days late. There can also be no question that there was substantial evidence to support a finding that the rent was due on the first day of the month. The tenant is an attorney who had an application for eviction filed against her by the prior landlord for late payment of rent. She also received both written and oral notices from the present landlord requesting that the rent be paid on the first day of the month and the tenant herself recognized the first day of the month as the day upon which rent is due when she objected to the increase in rent. The Board found as a fact that the first day of the month was when rent was due after hearing all of the evidence.
A waiver implied by a person’s conduct must be unequivocal and must allow room for no other explanation of the conduct of the person who allegedly is waiving a contractual right. Lone Mountain Prod. Co. v. Natural Gas Pipeline Co., 710 F. Supp 305, 311 (D. Utah 1989). There is no evidence that either the former or current landlord expressly waived the requirement that the rent be paid on the first of the month. To the contrary, both the former and current landlords repeatedly advised the tenant that the rent was always due on the first of the month.
The Board interprets its Bylaw and Rules to not require a landlord to refuse to accept rent checks in order to preserve a claim of consistent late payment of rent. *95 Rent Control Rule 1.04F does not allow a landlord to even seek an eviction based on the grounds of consistent late payment until the rent has been late for over 100 days. There is no reason to require the landlord to raise a flag of hostility by not accepting a check or by requiring a landlord to accept payment only for use and occupancy.
The court incorrectly reasoned that the landlord lulled the tenant into the belief that despite his words, her late payments would be accepted without legal consequence and then use the conduct which he permitted to continue as the basis for her eviction. The Board could have found that the tenant was not lulled into any belief. The landlord who is not an attorney was not even aware that late payment of rent was a ground for eviction. It was the hearing examiner who suggested to the landlord to amend his application. In addition, late payment of rent as a grounds for eviction does not trigger until the late payments reach over 100 days. Landlord did not sit on his legal rights. He did not even know they existed until he amended his application. The tenant who is an attorney was much more knowledgeable of her legal rights. Her late payments were deliberate and consistent for a long period of time in spite of the protests of the landlord.
The court in the instant matter improperly substituted its view of the facts and incorrectly treated the acceptance of rent checks as conclusive. The Board, as fact finder, considered all the circumstances and found that there was no waiver. The court erred in not giving due deference to that decision.
The tenant argues that the Board was required to find the landlord’s actions were a retaliation against tenant because of tenant’s complaints to the Board of Health. However, retaliation is a factual matter and the reported evidence in this case does not require such a finding. An argument can be made to the court by this tenant in a later summary process action that the eviction is retaliatory. In a prior case, where the Board found a retaliatory eviction and refused to issue a certificate of eviction, thereby precluding a court from making such a decision in a summary process action, this division held that the issue of a retaliatory eviction must be reserved as a defense for the tenant in the subsequent action for summary process. Post v. Brookline Rent Control Board, 26 Mass. App. Ct. 985, 986-987 (1988). The Appeals Court has not taken a position on this issue. Slavin v. Rent Control Board of Brookline, 26 Mass. App. Ct. 985, 986-987 (1988). But see Jacobs v. Rent Control Board of Brookline, 27 Mass. App. Ct. 1186, 1188 (1989).
For the above reason, the judgment of the court is vacated and the decision of the Board in issuing a certificate of eviction on the ground of consistent late payments is affirmed.